<table>
<tr><td>DISTRICT COURT, DENVER COUNTY, COLORADO<br><br>1437 Bannock Street<br>Denver, CO 80203</td><td rowspan="2">DATE FILED<br>April 1, 2026 4:41 PM<br>FILING ID: E4CDDF705A8EB<br>CASE NUMBER: 2026CV31172<br><br>▲ COURT USE ONLY ▲<br><br>Case Number:</td></tr>
<tr><td>PLAINTIFFS: BONEITA CASALI and KELLI MCCLURE, on behalf of themselves and all others similarly situated,<br><br>v.<br><br>DEFENDANTS: CHECKPEOPLE, LLC and INFORMATION.COM LLC</td></tr>
<tr><td>Attorneys for Plaintiffs:<br><br>PELUSO LAW LLC<br>Patrick H. Peluso (#47642)<br>865 Albion Street, Suite 250<br>Denver, CO 80220<br>Telephone: (720) 805-2008<br>Facsimile: (720) 336-3663<br>Email: ppeluso@pelusolawfirm.com<br><br>BURSOR & FISHER, P.A.<br>Joseph I. Marchese (pro hac vice application forthcoming)<br>1330 Avenue of the Americas, 32nd Floor<br>New York, NY 10019<br>Telephone: (646) 837-7150<br>Facsimile: (212) 989-9163<br>Email: jmarchese@bursor.com<br><br>[Additional counsel on signature page]</td><td>Courtroom:</td></tr>
<tr><td colspan="2"><u>CLASS ACTION COMPLAINT AND JURY DEMAND</u></td></tr>
</table>

## COLO. REV. STAT. § 13-17-201 STATEMENT

Plaintiffs, pursuant to Colo. Rev. Stat. § 13-17-201, plead that all claims asserted herein are made in good faith and are non-frivolous, and are filed for the express purpose of establishing the meaning, lawfulness, and/or constitutionality of a law, regulation, or constitutional right, specifically Colorado's "Prevention of Telemarketing Fraud Act" or "PTFA". The meaning, lawfulness, or constitutionality of PTFA has not been determined by the Colorado Supreme Court and the issues presented herein are matters of first impression.

Plaintiffs Boneita Casali and Kelli McClure ("Plaintiffs"), individually and on behalf of all others similarly situated, brings this Class Action Complaint for violations of Colo. Rev. Stat. § 6-1-304 (Colorado's "Prevention of Telemarketing Fraud Act" or "PTFA") against Defendants Checkpeople, LLC ("Checkpeople") and Information.com LLC ("Information.com") (collectively, "Defendants"). Plaintiffs make the following allegations pursuant to their counsel's investigation and based upon information and belief, except as to allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF THE ACTION

1. On May 27, 2005, former Colorado Governor Bill Owens signed into law HB05-1288,[1] which amended the PTFA to prohibit commercially listing a cell phone number in a directory, without permission.[2] *See* Colo. Rev. Stat. § 6-1-304(4)(a)(I).

2. This prohibition is designed to protect privacy. As former State Representative Mark Cloer,[3] a prime sponsor of HB05-1288,[4] stated in describing this new portion of the PTFA: "[m]ost people view their cell phones as private. They give out the number to friends and family and some colleagues. When their cell phone rings, they expect it to be important."[5]

3. Indeed, concern over cell phone privacy is widespread. According to a research paper presented in May 2005 at the American Association for Public Opinion Research (AAPOR)'s Annual Conference[6] and January 2006 at the American Statistical Association (ASA)'s Second International Conference on Telephone Survey Methodology:[7]

> [T]here appears to be a strong reluctance on the part of cell phone owners to have their cell phone numbers listed in a directory. …
>
> This reluctance on the part of respondents to have their cell phone number listed in a directory may be rooted in not wishing to incur additional costs due to unsolicited incoming calls. …

---

[1] https://www.leg.state.co.us/clics2005a/csl.nsf/fsbillcont2/1BB0D3E00348AC6987256F90007C20C7?Open. *See also* https://scholar.law.colorado.edu/cgi/viewcontent.cgi?article=3081&context=session-laws-2001-2050.

[2] https://www.leg.state.co.us/CLICS2005A/commsumm.nsf/IndSumm/574E34C489356ADA87256FB100612E60?OpenDocument. *See also* https://www.leg.state.co.us/CLICS2005A/commsumm.nsf/91320994cb8e0b6e8725681d005cb995/574e34c489356ada87256fb100612e60?OpenDocument.

[3] *See* https://www.leg.state.co.us/clics2005a/directory.nsf.

[4] https://scholar.law.colorado.edu/cgi/viewcontent.cgi?article=3289&context=session-laws-2001-2050 at p. 2461. *See also* https://www.leg.state.co.us/CLICS2005A/csl.nsf/StatusAll?OpenFrameSet.

[5] https://www.9news.com/article/news/local/politics/legislative-library-feb-23-2005/73-344789916.

[6] https://aapor.org/wp-content/uploads/2024/05/AAPORPrograms2005.pdf at pp. 13, 84.

[7] https://scholar.google.com/citations?view_op=view_citation&hl=en&user=I2jkzr0AAAAJ&citation_for_view=I2jkzr0AAAAJ:M3ejUd6NZC8C; https://ww2.amstat.org/meetings/tsmii/2006/index.cfm?fuseaction=main.

> A more likely reason for their unwillingness to have their cell phone number listed is that respondents view the cell phone as more of a private medium of communication than their land-line phone. They probably wish to restrict access to their cell phone number to family and friends.[8]

4. The Colorado General Assembly enacted subsection (4) of the PTFA to address these privacy concerns and to protect cell phone users from the misappropriation of their personal information. This aligns with the PTFA's overall purpose, as articulated by Colo. Rev. Stat. § 6-1-301:

> The general assembly hereby finds, determines, and declares that the use of telephones for commercial solicitation is rapidly increasing; that this form of communication offers unique benefits, but entails special risks and poses the potential for abuse; that the general assembly finds that the widespread practice of fraudulent and deceptive commercial telephone solicitation has caused substantial financial losses to thousands of consumers, and, particularly, elderly, homebound, and otherwise vulnerable consumers, and is a matter vitally affecting the public interest; and, therefore, that the general welfare of the public and the protection of the integrity of the telemarketing industry requires statutory regulation of the commercial use of telephones.

5. Colo. Rev. Stat. § 6-1-304(4) provides, in pertinent part:

> (a) On or after September 1, 2005, a person commits an unlawful telemarketing practice if the person knowingly:
>
> (I) Lists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing[.]

6. Despite this abundantly clear proscription, Defendant has listed the cellular telephone numbers of thousands of Colorado residents in its for-sale and for-profit directories, without requesting (let alone actually receiving) affirmative consent to such listings.

7. Thus, while Defendant profits handsomely from its unauthorized commercial listing of Plaintiffs' and other Class Members' personal information, it does so at the expense of Coloradans' statutory privacy rights, under the PTFA.

8. Not only is Defendant's misappropriation unlawful – it is also dangerous. The Federal Trade Commission's ("FTC") report on "Data Brokers" states:

> There are a number of potential risks to consumers from data brokers'

[8] http://www.asasrms.org/Proceedings/y2005/files/JSM2005-000345.pdf at p. 4005.

> collection and use of consumer data. … [T]hey may facilitate the sending of advertisements … which some consumers may find troubling and which could undermine their trust in the marketplace. Moreover, … people search products can be used to facilitate harassment, or even stalking, and may expose domestic violence victims, law enforcement officers, prosecutors, public officials, or other individuals to retaliation or other harm. [In addition, s]toring [d]ata [a]bout [c]onsumers [i]ndefinitely [m]ay [c]reate [s]ecurity [r]isks[.][9]

9. Plaintiffs bring this action to prevent Defendant from further violating the privacy rights of Colorado cell phone users and to recover statutory damages from Defendant, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

## PARTIES

10. Plaintiff Boneita Casali is, and has been at all relevant times, a resident and citizen of Parachute, Colorado. Plaintiff's cellular telephone number was listed by Defendants in their directories, available at checkpeople.com and information.com, to advertise products and services and/or pursuant to Defendants' provision of their paid subscription services. Defendants never requested – and Plaintiff never provided – affirmative consent, through written, oral, or electronic means, to such listings. In fact, Plaintiff has no relationship with Defendants whatsoever, and, to date, has never visited Defendants' websites. Plaintiff had never heard of Defendants and had no reasonable ability to discover Defendants' use of her personal information until shortly before filing suit

11. Plaintiff Kelli McClure is, and has been at all relevant times, a resident and citizen of Wheat Ridge, Colorado. Plaintiff's cellular telephone number was listed by Defendants in their directories, available at checkpeople.com and information.com, to advertise products and services and/or pursuant to Defendants' provision of their paid subscription services. Defendants never requested – and Plaintiff never provided – affirmative consent, through written, oral, or electronic means, to such listings. In fact, Plaintiff has no relationship with Defendants whatsoever, and, to date, has never visited Defendants' websites. Plaintiff had never heard of Defendants and had no reasonable ability to discover Defendants' use of her personal information until shortly before filing suit.

12. Defendant Checkpeople, LLC is a Delaware limited liability company with its principal place of business at 111 North Orange Avenue, Suite 800, Orlando, Florida 32801. Defendant is a business primarily engaged in the business of selling or leasing goods or services. Specifically, Defendant owns and operates the paid directory checkpeople.com. Therein, and for commercial purposes, Defendant has listed the cellular telephone numbers of thousands of individuals whom it knows to reside in Colorado.

13. Defendant Information.com LLC is a Delaware limited liability company with its principal place of business at 8875 Hidden River Parkway, Suite 300, Tampa, Florida 33637.

---

[9] https://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf at p. 48.

Defendant is a business primarily engaged in the business of selling or leasing goods or services. Specifically, Defendant owns and operates the paid directory information.com. Therein, and for commercial purposes, Defendant has listed the cellular telephone numbers of thousands of individuals whom it knows to reside in Colorado.

14. On information and belief, Defendant Checkpeople, LLC is managed by Delaware corporation Slatkis, Inc.[10] On information and belief, Defendant Information.com LLC is owned by Delaware corporation Slatkis, Inc.[11]

## JURISDICTION AND VENUE

15. The Court has subject matter jurisdiction pursuant to Colo. Const. Art. VI, § 9.

16. The Court has personal jurisdiction over Defendants pursuant to Colo. Rev. Stat. § 13-1-124(1)(a) because Defendants transact business in Colorado. The Court also has personal jurisdiction over Defendants pursuant to Colo. Rev. Stat. § 13-1-124(1)(b). Defendants' tortious conduct – listing the cellular telephone numbers of thousands of individuals whom Defendants know to reside in Colorado, without requesting or receiving said individuals' affirmative consent – caused injury in Colorado and thus constituted a tort here.

17. Venue is proper in this Court pursuant to Colo. R. Civ. P. 98(c)(1), which permits trial of this action in the county of Plaintiffs' choice, as Defendants are not residents of Colorado. *See* Colo. R. Civ. P. 98(c)(1) ("if the defendant is a nonresident of this state, the [action] may be tried … in the county designated in the complaint[.]").

## COMMON FACTUAL ALLEGATIONS

### I. Overview of Defendants' Directories

18. Defendants are data brokers – companies "that collect consumers' personal information and resell or share that information with others[.]"[12]

19. Specifically, Defendants provide online "people search" (also known as "people finder") services. People search companies, like Defendants, specialize in compiling vast amounts of information about individuals from various sources.[13]

20. Defendants and their competitors monetize said personal details through their directories – some of which are ad-supported and give users free access to the data, and others

[10] *See* https://search.sunbiz.org/Inquiry/CorporationSearch/GetDocument?aggregateId=forl-m17000009850-036b9b1c-e016-4a3b-b295-f4980149db1f&transactionId=m17000009850-eae31fab-6aaa-4c54-9a47-27f3b7278af1&formatType=PDF.

[11] *See Mannacio v. Information.com LLC*, No. 4:24-cv-01717-JSW (N.D. Cal.), ECF No. 13.

[12] https://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf at p. i.

[13] https://consumer.ftc.gov/articles/what-know-about-people-search-sites-sell-your-information.

of which furnish reports about people for a fee.

21. Defendants' directories are available at checkpeople.com and information.com. There, checkpeople.com and information.com users can view Coloradans' cell phone numbers, addresses, and more.

22. This is achieved by simply searching an individual by name, city, state, phone number, address, and/or other parameters:[14]







[14] Here and in the subsequent paragraphs, images pertaining to Checkpeople appear first and images pertaining to Information.com appear second. Note, in subsequent images, certain sensitive personal information has been redacted (black and gray portions).

23. Users of checkpeople.com and information.com can also find people listed by last name (i.e., those with last names starting with the letter "A"):







//

//

//

//

//

24. After entering this information, checkpeople.com and information.com users are furnished a list of search results. Each result corresponds to an actual person that Defendants have located who matches the searched parameters. Checkpeople.com search results include searched individuals' unredacted name, aliases, age, relatives, current address, and full cell phone number(s). Checkpeople.com search results include searched individuals' partially redacted and/or truncated[15] address history and email address(es). Information.com search results include searched individuals' unredacted name, aliases, age, relatives, current address, and full cell phone number(s). Information.com search results include searched individuals' partially redacted and/or truncated address history and email address(es).




[15] Checkpeople.com and information.com search results include some full past addresses, include some partial past addresses (only city, state and ZIP code), and/or omit some past addresses. Checkpeople.com and information.com search results include email addresses that are partially redacted using asterisks (i.e., "joh****@gmail.com"). These details can be viewed in their full, unredacted form by paying to acquire access to checkpeople.com and information.com's paid, full background reports.


information.com
PEOPLE
PHONE
[redacted]
City
[redacted] Personal Profiles for [redacted] Found.
View Records
Results 1 - [redacted] of [redacted]
✓ Address(27) ✓ Phone(10). [redacted] found in [redacted] and [redacted] Find [redacted] home address, phone numbers, background check, social media profiles, email addresses, age, birthday, white pages and public records.
Sort By
Relevance
Filter by State
Sort By
Relevance
[redacted] age [redacted]
OPEN REPORT
[redacted] was born in [redacted] age [redacted] address is [redacted] Possible relatives include [redacted] Public records show [redacted] has also lived in [redacted] John's latest phone number is [redacted] Previous phone numbers include [redacted] and [redacted]
Also goes by: [redacted]
Related to: [redacted]
Phone Numbers: [redacted]
Address History: [redacted]
[redacted] age [redacted]
OPEN REPORT
[redacted] current address is [redacted] age is [redacted] years old [redacted] Phone numbers associated with [redacted] are [redacted] has also lived in [redacted]
Related to: [redacted]
Phone Numbers: [redacted]
Address History: [redacted]

//

//

//

//

//

//

//

//

//

25. Upon selecting a particular person to investigate from the checkpeople.com search results, a checkpeople.com user can also access a free, more detailed preview of checkpeople.com's paid, full background reports. The checkpeople.com free preview includes searched individuals' unredacted name, aliases, age, relatives, current address, and full cell phone number(s) with line type (i.e., "MOBILE"). The checkpeople.com free preview includes searched individuals' partially redacted and/or truncated[16] address history and email address(es).

26. At the top of the checkpeople.com free preview, checkpeople.com users are presented with a call to action – "MOBILE PHONE: View Current Number." The words "View Current Number" appear (along with an icon shaped like a lock) inside a button. When clicked, the "View Current Number" button directs checkpeople.com users to webpages where they can pay to acquire access to checkpeople.com's paid, full background reports.




//

//

//

---

[16] The checkpeople.com free preview includes one full past address, along with other past addresses that are partially redacted using asterisks (i.e., "123 *** Street, Denver, CO 80203"). The checkpeople.com free preview includes email addresses that are partially redacted using asterisks (i.e., "joh****@gmail.com"). These details can be viewed in their full, unredacted form by paying to acquire access to checkpeople.com's paid, full background reports.

27. For users that sign up and pay to acquire access, checkpeople.com and information.com both make available paid, full background reports that offer a comprehensive view into individuals' private details, including their full, unredacted cell phone number(s).

## PERSONAL INFORMATION

This section includes a full summary of personal information, including, but not limited to, full legal first, middle, and last name, known aliases, date of birth, age, phone number, current address and/or any other contact information.

### Overview

| Full name | Age | Date of birth/year | Other dates of birth |
|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] |
| **Date of death** | **Current address** | **Known aliases** | **Gender** |
| [redacted] | [redacted] | [redacted] | Male |
| **Race** | **Hair** | **Eyes** | **Height** |
| [redacted] | [redacted] | [redacted] | [redacted] |
| **Weight** | | | |
| [redacted] | | | |
| **Interests** | | | |

### Emails ( 2 )

| # | Email | Type | Dates |
|---|---|---|---|
| 1 | [redacted] | Unknown | Unknown |
| 2 | [redacted] | Unknown | Unknown |

### Phone numbers ( 1 )

[redacted]
Cellco Partnership Dba Verizon Wireless - Oh (Verizon Wireless)
Line Type : Mobile
Location : [redacted]
Dates : [redacted]

### Photos (0)

By viewing this PDF report, you agree that you will NOT use this report or CheckPeople.com's products or services to determine someone's eligibility for credit, insurance, employment, or for any other purpose defined and regulated by the https://en.wikipedia.org/wiki/Fair_Credit_Reporting_Act. Additionally, you understand and agree that CheckPeople.com is not a "consumer reporting agency" as defined in the Fair Credit Reporting Act (15 U.S.C. Â§ 1681, et seq.) ("FCRA"), which means that CheckPeople.com does not provide "consumer reports" as the FCRA defines. For a handy guide on how you can legally use CheckPeople.com, please visit https://checkpeople.com/company/dos-donts.

CheckPeople.com
CONFIDENTIAL

# Personal Information

This section includes a full summary of personal information, including, but not limited to, full legal first, middle, and last name, known aliases, date of birth, age, phone number, current address and/or any other contact information.

## Overview

| Full Name | Date of Birth | Date of Death |
|---|---|---|
| [redacted] | [redacted] | N/A |

| Age | Gender | Hair |
|---|---|---|
| [redacted] | N/A | N/A |

| Eyes | Race | Weight |
|---|---|---|
| N/A | N/A | N/A |

| Height | Languages Spoken | Zodiac |
|---|---|---|
| N/A | N/A | [redacted] |

Current Address

[redacted], MA [redacted]

Known Aliases

N/A

Interests

N/A

## Emails (9)

| # | Email | Type | Dates |
|---|---|---|---|
| 1 | [redacted]@gmail.com | Unknown | Unknown |
| 2 | [redacted]@[redacted].com | Unknown | Unknown |
| 3 | [redacted]@yahoo.com | Unknown | Unknown |
| 4 | [redacted]@[redacted].net | Unknown | Unknown |
| 5 | [redacted]@[redacted].net | Unknown | Unknown |
| 6 | [redacted]@yahoo.com | Unknown | Unknown |
| 7 | [redacted]@[redacted].net | Unknown | Unknown |
| 8 | [redacted]@[redacted].com | Unknown | Unknown |
| 9 | [redacted]@[redacted].net | Unknown | Unknown |

## Phone Numbers (19)

( [redacted] ) [redacted] - [redacted]
[redacted]
Line Type: Mobile
Location: [redacted], MA
Dates: Unknown

( [redacted] ) [redacted] - [redacted]
[redacted]
Line Type: Landline
Location: [redacted], MA
Dates: Unknown

( [redacted] ) [redacted] - [redacted]
[redacted]
Line Type: Mobile
Location: [redacted], MA
Dates: Unknown

( [redacted] ) [redacted] - [redacted]
[redacted]
Line Type: Landline
Location: [redacted], MA
Dates: Unknown

Page 3

information.com

CONFIDENTIAL

By viewing this PDF report, you agree that you will NOT use this report or Information.com's products or services to determine someone's eligibility for credit, insurance, employment, or for any other purpose defined and regulated by the FCRA( https://en.wikipedia.org/wiki/Fair_Credit_Reporting_Act ).

Additionally, you understand and agree that Information.com is not a 'consumer reporting agency' as defined in the Fair Credit Reporting Act (15 U.S.C. Â§ 1681, et seq.) ('FCRA'), which means that Information.com does not provide 'consumer reports' as the FCRA defines. For a handy guide on how you can legally use Information.com, please visit our Do's and Don'ts (https://information.com/dos-and-donts ).

28. As the above images of checkpeople.com and information.com make clear, Defendants knowingly list Coloradans' cell phone numbers. Checkpeople.com presents users with a call to action – "MOBILE PHONE: View Current Number" – and checkpeople.com states, "[w]hether you want to verify the identity of the caller or learn if [a] number is connected to a landline or cell, CheckPeople.com is here to help."[17] Per information.com, its reports provide "a full summary of personal information, including, but not limited to, … phone number," with "[l]ine [t]ype: [m]obile" or "[l]andline[.]"[18] Further, checkpeople.com and information.com label cell phone numbers as "[m]obile" and indeed provide full, unredacted cell phone numbers belonging to individuals for whom checkpeople.com and information.com include Colorado addresses.

29. Defendants list Plaintiffs' and Class Members' cell phone numbers for a commercial purpose: (a) to entice checkpeople.com and information.com users to pay to acquire access to checkpeople.com's paid, full background reports; and (b) to fulfill Defendants' obligations to checkpeople.com and information.com users who have paid to acquire access to checkpeople.com's paid, full background reports, which include cellular telephone numbers. Defendants are literally selling Plaintiffs' and Class Members' cell phone numbers and accompanying information to their customers.

30. To acquire a full background report from checkpeople.com, a user can buy a one-month subscription for $29.16 and an add-on for unlimited PDF downloads for $6.95.[19] To acquire a full background report from information.com, a user can buy a one-month subscription for $29.99 and an add-on for unlimited PDF downloads for $6.99.[20] Checkpeople.com and information.com users can also access 5-day trial memberships for approximately $1.




[17] https://web.archive.org/web/20250325075252/https://checkpeople.com/blog/how-to-tell-if-a-phone-number-is-a-cell-or-landline/.

[18] https://customer-api.onerep.com/data-broker-reports/244.

[19] https://www.bbb.org/us/fl/orlando/profile/information-bureaus/checkpeople-llc-0733-90442795/complaints?page=4.

[20] https://www.bbb.org/us/fl/tampa/profile/search-engine-marketing/informationcom-llc-0653-90440287/complaints?page=4.




## II. Defendants' Conduct Harms Coloradans

31. Consumer data is key to the $26 billion-per-year online advertising industry in the United States.[21] Clearly, and per the FTC, consumer data possesses inherent monetary value:

> Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The larger the data set, the greater potential for analysis – and profit.[22]

32. In fact, individuals' private information has become such a valuable commodity that companies now offer individuals the opportunity to monetize their personal data.[23]

33. These companies' business models capitalize on a fundamental principle underlying the modern information marketplace: Consumers recognize the economic value of their private data. Along these lines, research shows that consumers are willing to pay a premium to purchase services from companies that adhere to more stringent policies of

---

[21] http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html.

[22] https://www.ftc.gov/sites/default/files/documents/public_statements/remarks-ftc-exploring-privacy-roundtable/091207privacyroundtable.pdf at p. 2.

[23] *See, e.g.*, https://www.washingtonpost.com/technology/2023/02/06/consumers-paid-money-data/; http://www.nytimes.com/2012/02/13/technology/start-ups-aim-to-help-users-put-a-price-on-their-personal-data.html; https://techcrunch.com/2023/08/16/caden-lands-15m-to-let-users-monetize-their-personal-data/; https://www.theverge.com/2019/6/11/18661595/facebook-study-app-monitor-phone-usage-pay; https://sifted.eu/articles/gener8; https://www.theverge.com/2012/2/8/2785751/google-screenwise-panel-web-monitoring-knowledge-networks; https://www.sidehustlenation.com/get-paid-for-your-data/; https://millennialmoneyman.com/get-paid-for-your-data/.

protecting their data.[24] A 2014 survey conducted by Harris Interactive on behalf of TRUSTe, Inc. showed that 89 percent of consumers avoid doing business with companies who they believe do not protect their privacy.[25] The same is true for 80 percent of smartphone users, who say that they avoid using smartphone apps that they don't believe protect their privacy.[26]

34. Defendants' misappropriation of Coloradans' cell phone numbers undeniably deprives state residents of the ability to enjoy their PTFA privacy rights. It also deprives them of the real, quantifiable value of such data.

35. Further, "[p]eople search sites … offer a wealth of information that can be exploited by malicious actors."[27] For one, "[b]undling [personal data] all together and making it so easily accessible can … put ordinary people at risk of … stalking and other forms of harassment."[28] Second, people search sites' "comprehensive data allows cybercriminals to build detailed profiles of potential victims, making it easier to craft convincing scams or carry out identity theft."[29] This "put[s] almost anyone within the reach of fraudulent telemarketers[]" and other wrongdoers.[30]

36. Information disclosures like Defendants' are particularly dangerous to the elderly. "Older Americans are perfect telemarketing customers, analysts say, because they are often at home, rely on delivery services, and are lonely for the companionship that telephone callers provide."[31] The FTC notes that "[t]he elderly often are the deliberate targets of fraudulent telemarketers who take advantage of the fact that many older people have cash reserves or other assets to spend on seemingly attractive offers."[32]

37. Making matters worse, "[o]nce marked as receptive to [a specific] type of scam, a consumer often is bombarded with similar fraudulent offers from a host of scam artists."[33]

38. Cell phone numbers are also a key piece of information for SIM swappers - hackers who take over a target's phone number in order to receive their calls and texts, which in turn can

[24] *See, e.g.*, https://web.archive.org/web/20250622135647/https://www.enisa.europa.eu/sites/default/files/publications/monetising_privacy.pdf; https://papers.ssrn.com/sol3/Delivery.cfm?abstractid=3305347.

[25] *See* https://web.archive.org/web/20190820142832/http://www.theagitator.net/wp-content/uploads/012714_ConsumerConfidenceReport_US1.pdf at p. 3.

[26] *Id.*

[27] https://www.foxnews.com/tech/dangerous-intersection-people-search-sites-scams.

[28] https://innovation.consumerreports.org/Data-Defense_-Evaluating-People-Search-Site-Removal-Services-.pdf.

[29] https://www.foxnews.com/tech/dangerous-intersection-people-search-sites-scams.

[30] http://www.nytimes.com/2007/05/20/business/20tele.html.

[31] *Id.*

[32] https://www.ftc.gov/sites/default/files/documents/public_statements/prepared-statement-federal-trade-commission-fraud-against-seniors/agingtestimony.pdf at p. 1.

[33] *Id.* at p. 3.

let them break into all manner of accounts. These sorts of hackers have been linked to countless hacks of individual people in order to, among other things, steal online usernames or cryptocurrency. Some have worked directly with ransomware gangs from Eastern Europe. Armed with a cell phone number, a SIM swapper may then impersonate the victim and convince their telecom provider to reroute text messages to a SIM card the hacker controls. From there, the hacker can request password reset text messages, or multifactor authentication codes, and log in to the victim's valuable accounts. This could include accounts at financial institutions, accounts that store cryptocurrency or, even more damaging, their email accounts, which in turn could grant access to many other accounts. For this reason, the FBI recommends on its website that people do not publicly advertise their phone number. "Protect your personal and financial information. Don't advertise your phone number, address, or financial assets, including ownership or investment of cryptocurrency, on social media sites," the site reads.[34]

## CLASS ALLEGATIONS

39. Plaintiffs seek to represent a class defined as all Colorado residents whose cell phone numbers were listed on one of Defendants' websites without their affirmative consent (the "Class").

40. Plaintiffs reserve the right to modify the Class definition, including by using subclasses, as appropriate based on further investigation and discovery obtained in the case.

41. **Numerosity:** The Class is composed of at least thousands of individuals, the joinder of which in one action would be impracticable. The disposition of their claims through this class action will benefit both the parties and the Court.

42. **Existence and Predominance of Common Questions of Fact and Law:** There is a well-defined community of interest in the questions of law and fact involved affecting the members of the proposed Class. The questions of law and fact common to the proposed Class predominate over questions affecting only individual Class Members. Such questions include, but are not limited to, the following: whether Defendants violated Colo. Rev. Stat. § 6-1-304(4)(a)(I); and whether Plaintiffs and Class Members are entitled to damages, reasonable attorneys' fees, pre-judgment interest and costs of this suit, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

43. **Typicality:** The claims of the named Plaintiffs are typical of the claims of the Class because Plaintiffs, like all other Class Members, had their cell phone number listed on checkpeople.com and information.com for a commercial purpose; Defendants did so without requesting or receiving Plaintiffs' affirmative consent (through written, oral, or electronic means); and Defendants' misappropriation of Plaintiffs' personal data (including the economic value thereof) came at the expense of Plaintiffs' PTFA privacy rights.

---

[34] https://www.wired.com/story/a-researcher-figured-out-how-to-reveal-any-phone-number-linked-to-a-google-account/; https://www.fbi.gov/contact-us/field-offices/phoenix/news/press-releases/fbi-tech-tuesday-sim-swapping.

44. **Adequacy:** Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

45. **Superiority:** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class. Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues. Finally, Defendants have acted or refused to act on grounds generally applicable to the entire Class, thereby making it appropriate for this Court to grant final injunctive relief and declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

### COUNT I
### Violation of the Prevention of Telemarketing Fraud Act,
### Colo. Rev. Stat. § 6-1-304(4)(a)(I)

46. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

47. Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendants.

48. Colo. Rev. Stat. § 6-1-304(4) provides, in pertinent part:

> (a) On or after September 1, 2005, a person commits an unlawful telemarketing practice if the person knowingly:
>
> > (I) Lists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing[.]

49. Defendants failed to comply with this PTFA mandate.

50. Defendants knowingly lists Coloradans' cell phone numbers. Checkpeople.com presents users with a call to action – "MOBILE PHONE: View Current Number" – and

checkpeople.com states, "[w]hether you want to verify the identity of the caller or learn if [a] number is connected to a landline or cell, CheckPeople.com is here to help."[35] Per information.com, its reports provide "a full summary of personal information, including, but not limited to, … phone number," with "[l]ine [t]ype: [m]obile" or "[l]andline[.]"[36] Further, checkpeople.com and information.com label cell phone numbers as "[m]obile" and indeed provide full, unredacted cell phone numbers belonging to individuals for whom checkpeople.com and information.com include Colorado addresses.

51. To "list" in this context means "to have or show (someone or something) as part of a list, register, or record." *See List,* Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/list.

52. Defendants' websites, checkpeople.com and information.com, are directories – i.e., an "electronic resource containing lists of information, usually in alphabetical order, for example people's phone numbers or the names and addresses of businesses in a particular area[.]" *Directory*, Oxford Learner's Dictionary, https://oxfordlearnersdictionaries.com/us/definition/english/directory.[37] Defendants admit as much, referring to checkpeople.com as a "[p]eople [s]earch [d]irectory"[38] and referring to the "[i]nformation.com [p]eople [d]irectory[.]"[39]

53. Defendants list Plaintiffs' and Class Members' cell phone numbers for a commercial purpose: (a) to entice checkpeople.com and information.com users to pay to acquire access to checkpeople.com's paid, full background reports; and (b) to fulfill Defendants' obligations to checkpeople.com and information.com users who have paid to acquire access to checkpeople.com's paid, full background reports. Defendants are literally selling Plaintiffs' and Class Members' cell phone numbers and accompanying information to their customers.

54. Defendants never request nor receive Coloradans' "affirmative consent, through written, oral, or electronic means, to such listing[.]" Colo. Rev. Stat. § 6-1-304(4)(a)(I). In fact, Defendants never request nor receive any consent whatsoever, affirmative or otherwise, to list cell phone numbers. Rather, Defendants list the cell phone numbers of Coloradans they have never engaged with, have had no connection to, and who are unaware of Defendants' existence.

---

[35] https://web.archive.org/web/20250325075252/https://checkpeople.com/blog/how-to-tell-if-a-phone-number-is-a-cell-or-landline/.

[36] https://customer-api.onerep.com/data-broker-reports/244.

[37] *See also Directory*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriamwebster.com/dictionary/directory ("an alphabetical or classified list (as of names and addresses)[.]"); *Directory*, CAMBRIDGE ESSENTIAL AMERICAN ENGLISH DICTIONARY, https://dictionary.cambridge.org/us/dictionary/essential-american-english/directory ("a book or list of names and numbers"); *Directory*, ALLWORDS.COM MULTI-LINGUAL DICTIONARY, https://www.allwords.com/word-directory.html ("A list of names, address etc., of specific classes of people or organizations, often in alphabetical order or in some classification.").

[38] https://web.archive.org/web/20240723075757/https://checkpeople.com/search.

[39] https://web.archive.org/web/20250505113303/https://information.com/.

55. Defendants' misappropriation of Class Members' personal data (including the economic value thereof) came at the expense of Class Members' PTFA privacy rights. It deprived Class Members of the real, quantifiable value of such data. And it exposed Class Members to elevated risks of stalking, harassment, scams, identity theft, and unwanted telemarketing.

56. Thus, on behalf of themselves and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class; (3) damages, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c), of at least three hundred dollars and not more than five hundred dollars for each first offense, and at least five hundred dollars and not more than one thousand dollars for each second or subsequent offense; and (4) reasonable attorneys' fees and other litigation costs pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Class, respectfully request that this Court enter an Order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiffs as the representatives of the Class, and appointing Plaintiffs' counsel as Class Counsel;

B. Declaring that Defendants' actions, as set out above, violate Colo. Rev. Stat. § 6-1-304(4)(a)(I) (Colorado's "Prevention of Telemarketing Fraud Act" or "PTFA");

C. Awarding damages, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c), of at least three hundred dollars and not more than five hundred dollars for each first offense, and at least five hundred dollars and not more than one thousand dollars for each second or subsequent offense;

D. Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, *inter alia*, an Order requiring Defendants to comply with the PTFA;

E. Awarding Plaintiffs and the Class their reasonable attorneys' fees and other litigation costs pursuant to Colo. Rev. Stat. § 6-1-305(1)(c);

F. Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable; and

G. Awarding such other and further relief as equity and justice may require.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury for all issues so triable.

Dated: April 1, 2026

Respectfully submitted,

**PELUSO LAW LLC**

*/s/ Patrick H. Peluso*
Patrick H. Peluso

Patrick H. Peluso (#47642)
865 Albion Street, Suite 250
Denver, CO 80220
Telephone: (720) 805-2008
Facsimile: (720) 336-3663
Email: ppeluso@pelusolawfirm.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese (*pro hac vice application forthcoming*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jmarchese@bursor.com

**BURSOR & FISHER, P.A.**
Matthew A. Girardi (*pro hac vice application forthcoming*)
50 Main Street, Suite 475
White Plains, NY 10106
Telephone: (914) 874-0708
Facsimile: (914) 206-3656
Email: mgirardi@bursor.com

*Attorneys for Plaintiffs*